[Cite as *State v. Johnson*, 2021-Ohio-4447.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

| | |
|---|---|
| State of Ohio/City of Toledo | Court of Appeals Nos. L-20-1032 |
| | L-20-1033 |
| Appellee | |
| | Trial Court Nos. CRB-17-01948 |
| v. | TRD-17-03192 |
| Jamar Johnson | **DECISION AND JUDGMENT** |
| Appellant | Decided: December 17, 2021 |

* * * * *

David Toska, City of Toledo Prosecuting Attorney, and
Jimmie Jones, Assistant Prosecuting Attorney, for appellee.

Laurel A. Kendall, for appellant.

* * * * *

**MAYLE, J.**

{¶ 1} In these consolidated appeals, appellant, Jamar Johnson, appeals the

January 3, 2020 judgment of the Toledo Municipal Court sentencing him for probation[1]

violations in two misdemeanor cases. For the following reasons, we affirm, in part, and

reverse, in part.

---

[1] Prior to a statutory amendment in 2003, "probation" referred to a suspended jail sentence in a misdemeanor case. *State v. Mack*, 6th Dist. Lucas No. L-11-1065, 2012-Ohio-2960, ¶ 1, fn. 1. Since then, "probation" has ceased to exist, and a suspended jail term has become one of the community control sanctions available to a trial court to punish a misdemeanor offender. *Id.*, citing R.C. 2929.25. However, because the parties

## I.    Background and Facts

### A.  Cases before the court

{¶ 2} Initially, we must address which cases, exactly, Johnson is appealing.  In his original notice of appeal, filed on February 3, 2020, Johnson included trial court case Nos. CRB-17-01948 ("case 1948") and TRD-17-03192 ("case 3192").  More than seven months later, on August 10, 2020, Johnson filed an amended notice of appeal that included four additional trial court case numbers, i.e., case Nos. TRD-15-34408 (the "2015 case"), CRB-16-13843, CRB-16-17186, and TRD-16-30245.

{¶ 3} According to the amended notice of appeal, the additional cases "were part of" an earlier appeal that we dismissed in November 2019 because the trial court had not filed a final, appealable order.  *See State v. Johnson*, 6th Dist. Lucas No. L-19-1120 (Nov. 27, 2019).  In the entry dismissing the 2019 appeal, we said that Johnson "can file a notice [of] appeal once the trial court enters a final, appealable order."  *Id.*  The cases that were the subject of appellate case No. L-19-1120 were cases 1948 and 3192; the four additional case numbers that Johnson included in his amended notice of appeal were not at issue in case No. L-19-1120.

{¶ 4} After the trial court filed its revised sentencing entry, Johnson filed his original notice of appeal in this case, properly and timely appealing the trial court's decisions in cases 1948 and 3192.

---

and the trial court use the term "probation"—exclusively—to refer to Johnson's sanctions, we will use the terms "probation" and "community control" interchangeably for ease of discussion.

**{¶ 5}** Under App.R. 3(F)(1),

> [a] party may amend a notice of appeal without leave if the time to appeal
> from the order that was the subject of the initial notice of appeal has not yet
> lapsed under App.R. 4. Thereafter, the court of appeals within its discretion
> and upon such terms as are just may allow the amendment of a notice of
> appeal, *so long as the amendment does not seek to appeal from a trial court*
> *order beyond the time requirements of App.R. 4.* (Emphasis added.)

Subject to exceptions not relevant here, App.R. 4 gives a party 30 days from the date of the trial court's judgment to appeal the decision. A criminal defendant can seek to appeal outside of the 30-day time limit if he files with the appellate court a motion for leave to file a delayed appeal, and the appellate court grants the motion. App.R. 5(A), (F). A party's failure to file a timely notice of appeal deprives an appellate court of jurisdiction to hear the appeal. *State v. Taft*, 6th Dist. Huron No. H-18-003, 2019-Ohio-1565, ¶ 58, citing *State ex rel. Pendell v. Adams Cty. Bd. of Elections*, 40 Ohio St.3d 58, 60, 531 N.E.2d 713 (1988).

**{¶ 6}** Here, Johnson did not seek leave to amend his notice of appeal, nor did we grant him leave. Because we can find no evidence that Johnson filed timely appeals of any of the additional cases or appropriately sought and was granted leave to file delayed appeals in the criminal cases, we lack jurisdiction to entertain appeals of any of the additional cases. "And we cannot allow amendment of a notice of appeal where jurisdiction is lacking in the first instance." *State v. Conn*, 2021-Ohio-2727, 175 N.E.3d

3.

943 (4th Dist.), ¶ 14, citing *Cleveland v. Wagner*, 8th Dist. Cuyahoga No. 81730, 2003-Ohio-1358, ¶ 4.

{¶ 7} Accordingly, we find that the only cases properly before us are trial court case Nos. CRB-17-01948 and TRD-17-03192, and we will confine our discussion and analysis to those cases.

## B. Case Nos. CRB-17-01948 and TRD-17-03192

{¶ 8} In case 1948, Johnson was charged by complaint on February 12, 2017, with failure to disclose personal information in violation of R.C. 2921.29(A), a fourth-degree misdemeanor. According to the complaint,

> During routine patrol the defendant did approach these Officers [sic] patrol vehicle that was sitting at the corner of Oak and Earl and ask while recording on his cell phone why these Officers were sitting on "his property". The defendant became argumentative and these Officers asked the defendants [sic] name multiple times in which the defendant stated he didn't have to give his name to these Officers. The defendant never did state his name to these Officers, these Officers found his state I.D inside of his pants pocket. This did happen in the City of Toledo.

This incident took place on February 9, 2017.

{¶ 9} In case 3192, Johnson was cited by uniform traffic ticket on February 9, 2017, for driving under suspension in violation of R.C. 4510.11(A), a first-degree misdemeanor, and prohibited open container in violation of R.C. 4301.62(B), a minor misdemeanor.

4.

{¶ 10} On June 20, 2017, Johnson was in court after being arrested on a bench warrant for failing to appear at a pretrial. Johnson was representing himself in several criminal and traffic cases that were pending before the trial court. The city offered to allow Johnson to plead no contest to the failure to disclose charge in case 1948 and a resisting arrest charge in another case in exchange for dismissing approximately five other pending charges, including both charges in case 3192. Johnson declined the offer because he did not want to plead to the resisting arrest charge.

{¶ 11} But, during the trial judge's discussions with Johnson at that hearing, Johnson indicated that he wanted to plead no contest to several of the pending charges. The trial court accepted Johnson's no-contest plea to the failure to disclose charge in case 1948 and found him guilty. The court said on the record that it was sentencing Johnson to "30 days suspended; six months inactive probation; court costs with a stay on costs for two months to August 23." The trial court did not prepare or sign a typewritten judgment entry of sentence, but the handwritten journal entry from June 20 says "30 days susp / 6 mo inactive [sic]." The journal entry is also stamped with the word "PROBATION."

{¶ 12} The court also accepted Johnson's no-contest plea to the driving-under-suspension charge in case 3192 and found him guilty. The court said on the record that it was sentencing Johnson to "court costs; 180 days suspended; six months inactive [probation] on the condition of no new charges." The trial court did not prepare or sign a typewritten judgment entry of sentence, but the handwritten journal entry from June 20 says "180 days susp / 6 mo inactive [sic]." The journal entry is also stamped with the word "PROBATION." The court dismissed the open-container charge.

5.

{¶ 13} On July 28, 2017, the trial court's probation department filed a "Probation Report" alleging that Johnson had violated his probation in case 1948, case 3192, and the 2015 case because he was charged with new offenses. In case 1948, the probation department alleged two violations: one based on a new offense that Johnson committed on April 16, 2017, and was convicted of on June 1, 2017, and one based on a new offense that Johnson allegedly committed on June 30, 2017, that was pending. In case 3192, the probation department alleged a violation based only on the June 30 offense.

{¶ 14} On August 25, 2017, the trial court held a hearing on the violations. Although the court found that Johnson had violated his probation in the 2015 case, it specifically determined that Johnson did not violate his probation in cases 1948 and 3192. The court stated, "there was no conviction subsequent to those probations. There are pending charges, but at any rate, I'm going to indicate no probation at this time, and because there is no conviction, probation to continue on those cases." In other words, the court found that (1) Johnson had not violated his probation based on the April 16 charge because Johnson was convicted on June 1, 2017—which was 20 days before he was placed on probation, and (2) Johnson had not violated his probation based on the June 30 charge because there was "no conviction" and the case was still pending. The court's handwritten journal entries from August 25, 2017 confirm that it found "No PV," and the dockets show that there was "[n]o probation violation found" in either case 1948 or case 3192.

{¶ 15} On that same date, the trial court also set a "sentence review" for September 15, 2017, in "the case I just sentenced on * * *"—i.e., the 2015 case.

6.

{¶ 16} The next entries on the dockets for cases 1948 and 3192 indicate that the September 15, 2017 hearing—i.e., the "sentence review" for the 2015 case—was reset for a probation violation hearing on October 31, 2017. But, neither file contains a second "probation report" or other notice of probation violation, and the record does not contain a transcript of what, if anything, transpired on September 15.

{¶ 17} Johnson failed to appear for the October 31, 2017 hearing, and the trial court issued a warrant for his arrest. He was arrested in August 2018, and scheduled for a probation violation hearing on September 12, 2018. Again, the record does not contain any additional "probation reports" or notices of probation violation.

{¶ 18} On September 12, 2018, Johnson appeared for a probation violation hearing in cases 1948 and 3192, as well as a plea and sentencing hearing in three additional cases—trial court case Nos. CRB-17-08262, CRB-17-11859, and TRD-17-18511 (the "2017 cases"). The alleged probation violations arose from Johnson's convictions in the 2017 cases.

{¶ 19} Johnson's attorney argued that the trial court could not find that Johnson had violated his probation because, at the August 25, 2017 hearing, the trial court specifically found that Johnson had not violated his probation in cases 1948 and 3192 and the city had not filed any subsequent notices of probation violations. Counsel also argued that Johnson's term of probation had expired.

{¶ 20} The trial court found that "[t]here is a violation filed * * * for a probation violation date of October 31, 2017. And that was based on the new charges from September 22, 2017, I guess, just that charge." The court also found that, although

7.

Johnson's stated term of probation was scheduled to end in December 2017, he had "been consistently bench warrant" since the date of the violation, so the court still had jurisdiction to dispose of the violation filed before Johnson's term of probation expired.

{¶ 21} After finding that his convictions in the 2017 cases violated his probation in case 1948 and case 3192, the trial court sentenced Johnson for the probation violations. In case 1948, the court said that Johnson "had 30 days hanging over [his] head on that case[, but had] served 14 of those so there will be 16 days consecutive on that case." In case 3192, the court said that Johnson had "served 14 days on that one also, and I am ordering 166 days to be served consecutive on that case."

{¶ 22} The trial court next began sentencing Johnson on his new convictions from that day—i.e., the convictions in the 2017 cases. After the court imposed its sentence for case No. TRD-17-18511, Johnson asked to speak. His soliloquy touched on prior court hearings, his history with the trial judge, a case in which he believed that he was over-sentenced, issues that he had with the electronic-monitoring department while he was hospitalized, the amount of bond the trial court set in one of the cases he had just pleaded to, and the victim of one of his crimes using a fake Social Security number. Johnson also mention several times that he was "scared for [his] life" and "didn't even want to go forward with this"—"this" presumably being the plea hearing. He also asked the trial judge to recuse himself, which the judge denied as "an unreasonable request * * *."

{¶ 23} After the court sentenced Johnson on the 2017 cases, Johnson asked how he went "about withdrawing [his] plea * * *." The court summarily denied his request.

{¶ 24} Johnson now appeals, raising five assignments of error:

8.

I. The trial court abused its discretion when it refused to allow appellant to withdraw his plea without a hearing, and the court had the authority to set aside the judgment of conviction and permit appellant to withdraw his plea, pursuant to Crim. R. 32.1.

II. The trial court committed plain error when it found a probation violation had occurred in case CRB-17-01948 and TRD 17-03192 for an alleged new conviction in case CRB 17-11859, when the PV was alleged to have occurred on September 15, 2017, and the new offense was alleged to have occurred on September 22, 2017.

III. The court abused its discretion when it set appellant's appeal bond in case [] TRD 17-03192 at $100,000 based on an allegation that appellant "escaped" from CCNO on medical furlough, when documentation from CCNO indicates that he was released for medical treatment.

IV. The trial court abused its discretion when it incarcerated appellant for three days for a probation violation which had not occurred, and after the court had ostensibly corrected the record to reflect an unclassified misdemeanor in the underlying case (TRD 15-34408).

V. The trial court abused its discretion when it dismissed appellant's case for resisting arrest (CRB-16-13843), knowing that appellant wanted a jury trial in that matter, and then misrepresented the sequence of events in the case docket.

## II.     Law and Analysis

## A. The issues raised in Johnson's fourth and fifth assignments of error are not properly before the court.

{¶ 25} We first address Johnson's fourth and fifth assignments of error. His fourth assignment of error relates to the trial court's handling of a probation violation in the 2015 case, and his fifth assignment of error relates to the dismissal of case No. CRB-16-13843. As discussed above, neither of those cases was properly appealed, so we do not have jurisdiction to consider the arguments that Johnson raises in these assignments of error. Therefore, we find that Johnson's fourth and fifth assignments of error are not well-taken.

## B. Johnson did not move to withdraw his pleas in cases 1948 and 3192.

{¶ 26} In his first assignment of error, Johnson argues that the trial court erred by denying his oral motion to withdraw his pleas without holding a hearing. However, reading the transcript of the September 12, 2018 hearing makes clear that Johnson's request to withdraw his pleas related to the no-contest pleas he entered that day in the 2017 cases—*not* the pleas he entered 14 months earlier in cases 1948 and 3192.[2] Accordingly, we find that Johnson's first assignment of error is not well-taken.

## C. Johnson did not receive notice of the conduct that allegedly violated his community control.

{¶ 27} In his second assignment of error, Johnson argues that the trial court committed plain error by finding that he had violated his probation in cases 1948 and

---

[2] Incidentally, we note that Johnson raised the issue of withdrawing his pleas in the 2017 cases in an earlier appeal. *State v. Johnson*, 6th Dist. Lucas No. L-18-1214, 2019-Ohio-4613 ("*Johnson I*"). We determined that the trial court did not abuse its discretion by summarily denying Johnson's motion. *Id.* at ¶ 17-23.

10.

3192 because the court said at the September 12, 2018 hearing that Johnson had "committed a probation violation * * * due to an alleged conviction in case CRB 17-11859 [sic] on September 15, 2017[.] However, there was no conviction on September 15, 2017 in that case (or any other)." The city responds that the warrant for Johnson's arrest tolled his period of probation, and "his plea and finding of guilt allowed for the Trial Court to find a probation violation."

{¶ 28} We review a trial court's findings regarding a misdemeanor community control violation for an abuse of discretion. *State v. Crosby*, 6th Dist. Lucas Nos. L-19-1160 and L-19-1186, 2020-Ohio-3306, ¶ 23, citing *State v. Ohly*, 166 Ohio App.3d 808, 2006-Ohio-2353, 853 N.E.2d 675, ¶ 19 (6th Dist.); and *State v. Pavlich*, 6th Dist. Erie No. E-10-011, 2011-Ohio-802, ¶ 24. Abuse of discretion means that the trial court's decision was unreasonable, arbitrary, or unconscionable. *State ex rel. Askew v. Goldhart*, 75 Ohio St.3d 608, 610, 665 N.E.2d 200 (1996).

{¶ 29} Although proceedings to revoke community control are not equivalent to—and need not have the same level of formality as—a criminal trial, an offender facing revocation is entitled to certain due process protections. *State v. Stollings*, 2d Dist. Greene No. 2000-CA-86, 2001 WL 501981, *2 (May 11, 2001); *Pavlich* at ¶ 25, citing *State v. Ryan*, 3d Dist. Union No. 14-06-55, 2007-Ohio-4743, ¶ 8; and *Gagnon v. Scarpelli*, 411 U.S. 778, 782, 93 S.Ct. 1756, 36 L.Ed.2d 656 (1973). At a minimum, the offender must be provided with:

(a) written notice of the claimed violations; (b) disclosure of evidence against the [offender]; (c) the opportunity to be heard in person and to

present witnesses and documentary evidence; (d) the right to confront and cross-examine adverse witnesses; (e) a neutral and detached hearing body; and (f) a written statement by the fact finders as to the evidence relied on and reasons for revocation.

*Pavlich* at ¶ 25, citing *State v. McKeithen,* 3d Dist. Marion No. 9-08-29, 2009-Ohio-84, ¶ 22; *State v. Miller*, 42 Ohio St.2d 102, 104, 326 N.E.2d 259 (1975); and *Morrissey v. Brewer*, 408 U.S. 471, 489, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972).

{¶ 30} Here, Johnson argues that the trial court's finding of a probation violation was based solely on its erroneous factual determination that, as of September 15, 2017, Johnson had committed a probation violation, despite the fact that Johnson did not commit the offense that formed the basis of the probation violation—the charge in case No. CRB-17-11859—until September 22, 2017.

{¶ 31} It appears that Johnson's argument stems from two statements that the trial court made at the September 12 hearing. First, the court said that "I did make a finding on August 25 that there was no probation violation because he was not convicted, case was pending, probation to continue. He was then convicted and on September 15th that was set for probation violation hearing on October 31st before the end of his term of probation * * *." The "finding on August 25" refers to the trial court's August 25, 2017 finding that Johnson had not violated his probation in cases 1948 and 3192 based on the July 2017 probation report because (1) he was convicted of one of the offenses listed on that report *before* his probation in cases 1948 and 3192 began, and (2) the charge in the other case, case No. CRB-17-08262, was still pending as of August 25, 2017.

12.

{¶ 32} Second, shortly after making that statement, the trial court stated that "[t]here is a violation filed * * * for a probation violation date of October 31, 2017. And that was based on the new charges from September 22, 2017, I guess, just that charge." Based on our review of the transcript as a whole, it appears that the "probation violation * * * based on the new charges from September 22, 2017 * * *" referred to the charges in case No. CRB-17-11859, which were filed September 22, 2017—*not* the charge in case No. CRB-17-08262, which was pending as of August 25, 2017.

{¶ 33} We recognize that the trial court's statements about the various probation violations were confusing, but we disagree with Johnson's characterization of the court's error. Rather than finding a probation violation based on a notice filed a week before Johnson committed a crime, as Johnson contends, it seems that the court merely misstated the source of the probation violation by conflating two of the multiple cases before it that day.

{¶ 34} But, we nonetheless agree with Johnson that the trial court abused its discretion on September 12, 2018, when found that Johnson had committed probation violations in case 1948 and case 3192 for one simple reason: Johnson did not have notice that he was at risk of having his probation revoked in cases 1948 and 3192 at any time after August 25, 2017. As Johnson's counsel argued during the September 12 hearing,

> there are two alleged violations that occurred. The first violation * * * occurred before [Johnson] was placed on probation * * *. The other charge that is alleged is the menacing charge [in case No. CRB-17-08262] that he

13.

just pled to. There was a probation violation filed, there was a hearing held, *he was found not to be in violation because he hadn't been convicted.* * * * *A subsequent violation for the new charges was never filed.*

Therefore, I don't think there is any probation violation. (Emphasis added.)

We agree.

**{¶ 35}** At the probation violation hearing on August 25, 2017, the trial court specifically determined that Johnson did not commit probation violations in cases 1948 and 3192 based on the charge filed in case No. CRB-17-08262. The court said, "[f]or the record, on Case Number CRB-17-01948 and TRD-17-03192 there was no conviction subsequent to those probations. There are pending charges, but at any rate, I'm going to indicate no probation at this time, and because there is no conviction, probation to continue on those cases." The court's handwritten journal entries clearly state that it found "No PV," and the dockets show that there was "[n]o probation violation found" in either case 1948 or case 3192. Moreover, at the conclusion of the August 25, 2017 hearing, the court indicated that it wished to schedule a "sentence review" for September 15, 2017, in "*the case I just sentenced on* * * *"—i.e., the 2015 case. (Emphasis added.) The trial court did not indicate that it would be scheduling any further hearings relating to case 1948 or case 3192.

**{¶ 36}** In our view, this conclusively resolved the alleged probation violations listed in the July 2017 probation report in Johnson's favor. So, for the court to find Johnson in violation of the terms of his probation in September 2018, Johnson must have received an additional notice that was filed at some point *after* August 25, 2017. He did

14.

not.

{¶ 37} Notably, the trial court appears to have been under the misimpression that an additional notice had been filed. That is, at the September 2018 hearing, the trial court stated that "[t]here is a violation filed * * * for a probation violation date of October 31, 2017. And that was based on the new charges from September 22, 2017 * * *." This, however, was incorrect. Neither the file for case 1948, nor the file for case 3192 contains a probation report or other written notice of a probation violation that occurred on October 31, 2017—or *any* indication of probation violations after the trial court found "[n]o probation violation" on August 25, 2017. In reality, the notice for October 31, 2017, was no more than a scheduling notice that contained no substantive information relating to any alleged probation violations.

{¶ 38} At the August 25, 2017 hearing, after finding that Johnson had not violated his probation in cases 1948 and 3192, the trial court stated that "on the case I just sentenced on [i.e., the 2015 case] there will be a sentence review on * * *" September 15, 2017. The record does not contain a transcript from September 15, 2017, so we are unable to discern what might have happened in court that day—assuming a hearing occurred at all. However, the court made handwritten notations on each journal on September 15, 2017, that state, in pertinent part, "set PV hearing / 10-31-17 / CTN Prob.," and each file contains a notice from the clerk's office that states "Please be advised that the above referenced case has been set for PROBATION VIOLATION HEARING. You are ordered to appear in person on Tuesday, October 31, 2017 * * *." The docket entries for the notices sent by the clerk each state "[c]ase reset" and "[c]ase

continued." None of this provides any information that could have put Johnson on "notice of the claimed [probation] violations * * *"—especially because the trial court already found that there were *no probation violations* at the August 2017 hearing. *Pavlich* at ¶ 25. In other words, these were, at best, notices of scheduling changes; they were not notices of conduct that constituted violations of the terms of Johnson's probation.

{¶ 39} Accordingly, because Johnson's due process rights were violated by this lack of notice, we agree with Johnson that the trial court erred in finding that he violated his probation in cases 1948 and 3192. Johnson's second assignment of error is well-taken.

### D. The trial court did not abuse its discretion in setting Johnson's appeal bond.

{¶ 40} Finally, in his third assignment of error, Johnson argues that the trial court erred by setting his appeal bond in case 3192 at $100,000 based on the court's finding that Johnson had "escaped" from jail following a medical furlough because, although the furlough order required him to "'contact his attorney and report to his supervising probation officer or the court'" following treatment, "[n]otably, it did not require [Johnson] to return to [the jail] that same day[.]"

{¶ 41} The city responds that the trial court acted within its discretion in setting the appeal bond based on Johnson's criminal history and the fact that Johnson "was discharged from his medical care, on October 9, 2018 at 6:33 pm.[, but] did not appear to the Trial Court on October 10, 2018, his next contact with the Trial Court was April 14, 2019, some six months later [sic]."

16.

**{¶ 42}** Johnson was granted bond pending appeal and only objects to the amount of bond as excessive. Because there is no right to bail on appeal, we review the trial court's decision for an abuse of discretion. *Coleman v. McGettrick*, 2 Ohio St.2d 177, 179, 207 N.E.2d 552 (1965).

**{¶ 43}** Before trial, an accused is entitled to reasonable bail as provided by the Eighth Amendment to the United States Constitution and Article I, Section 9, of the Ohio Constitution, with certain exceptions. *See State ex rel. Baker v. Troutman,* 50 Ohio St.3d 270, 272, 553 N.E.2d 1053 (1990). "Prior to conviction, an accused is afforded the benefit of the presumption of innocence, the burden being upon the state to prove his guilt." *Coleman* at 180. After conviction, the presumption for bail no longer exists. *Id.*

**{¶ 44}** R.C. 2949.02(A) permits bail pending appeal, and provides:

> If a person is convicted of any bailable offense, including, but not limited to, a violation of an ordinance of a municipal corporation, in a municipal or county court or in a court of common pleas and if the person gives to the trial judge or magistrate a written notice of the person's intention to file or apply for leave to file an appeal to the court of appeals, the trial judge or magistrate may suspend, subject to division (A)(2)(b) of section 2953.09 of the Revised Code, execution of the sentence or judgment imposed for any fixed time that will give the person time either to prepare and file, or to apply for leave to file, the appeal. In all bailable cases, except as provided in division (B) of this section, the trial judge or magistrate may release the person on bail in accordance with Criminal Rule

46, and the bail shall at least be conditioned that the person will appeal without delay and abide by the judgment and sentence of the court.

{¶ 45} In support of this assignment of error, Johnson argues only that trial court abused its discretion by interpreting his failure to report to the court or his probation officer the day after he was discharged from receiving emergency medical care—which he lawfully left the jail to obtain—as an "escape." This focus on "escape," however, ignores the many factors considered in bail determinations. "[I]n determining the types, amounts, and conditions of bail," the trial court must consider factors such as the nature of the offense, the weight of the evidence against the defendant, the defendant's record of convictions, and the defendant's record of appearances or flight to avoid prosecution. Crim.R. 46(C).

{¶ 46} In this case, the record shows that Johnson is a flight risk, has failed to appear for numerous court dates, and has an extensive criminal record. Furthermore, Johnson had no right to an appellate bond, but the trial court's decision to *grant* an appellate bond was within its discretion. Based on the record, we find that the trial court did not abuse its discretion in setting Johnson's appeal bond at $100,000, considering (among other factors) his failure to report as ordered after a medical furlough. Accordingly, Johnson's third assignment of error is not well-taken.

### III. Conclusion

{¶ 47} For the foregoing reasons, the January 3, 2020 judgment of the Toledo Municipal Court is affirmed, in part, and reversed, in part. The trial court's determination that Johnson violated his probation in case Nos. CRB-17-01948 and TRD-17-03192 is

vacated.  The remaining portions of the court's sentencing entry are affirmed.  The parties are ordered to divide the costs of this appeal equally pursuant to App.R. 24.

Judgment affirmed, in part
and reversed, in part.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.


Christine E. Mayle, J. _____

_____
JUDGE

Gene A. Zmuda, P.J. _____

_____
Myron C. Duhart, J. _____                JUDGE
CONCUR.

_____
JUDGE

This decision is subject to further editing by the Supreme Court of Ohio's Reporter of Decisions.  Parties interested in viewing the final reported version are advised to visit the Ohio Supreme Court's web site at:
http://www.supremecourt.ohio.gov/ROD/docs/.